1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

9
10
11
12
13

| UNITED STATES OF AMERICA, | CASE NO. 07CR1408 WQH |
| Plaintiff, | ORDER |
| vs. | |
| SALVADOR OJEDA-AMARILLAS (15), | |
| Defendant. | |

HAYES, Judge:

The matter before the Court is the motion for an order suppressing wiretap evidence or, alternatively, setting an evidentiary hearing filed by Defendant Salvador Ojeda-Amarillas. (Doc. # 361).

## BACKGROUND FACTS

On May 7, 2007, the grand jury returned the indictment in this case charging Defendant Salvador Ojeda-Amarillas and eighteen other defendants with conspiracy to import methamphetamine, conspiracy to distribute methamphetamine, possession of methamphetamine with intent to distribute, money laundering conspiracy, and money laundering. This indictment resulted from the investigation of the alleged drug trafficking activities of Andres Chavez-Chavez which included approximately ten months of court-authorized wiretaps beginning on or about July 26, 2006.

The first wiretap application in this case sought interception of the wire communications from a wireless cell phone number (T-2) used by Andres Chavez-Chavez. The application sought to intercept the communications of Andres Chavez-Chavez, David Chavez-Chavez, Salvador Chavez-Chavez, Gerardo Casanova, Carlos Aviles, and Chava "2000", "subsequently

identified as Defendant Salvador Ojeda-Amarillas." (Doc. # 361-2 at 3). In the affidavit in support of the first wiretap application dated July 26, 2006, Drug Enforcement Administration Special Agent Kathryn D. Jackson stated:

> This investigation is focused on a group of methamphetamine traffickers in Mexico and the United States. Based on the evidence below, we suspect the immediate Mexico-based supplier is or works with an unknown person who uses a phone subscribed to "Chava 2000" . . . It appears "Chava 2000" (or those he works with) may use Carlos Aviles to import methamphetamine into the United States. Based upon source information, agents have seized two loads of liquid methamphetamine from couriers allegedly employed by Aviles. We have identified Andres Chavez-Chavez, aka Pacas ("Chavez"), as a methamphetamine trafficker who resides in San Diego County. Based upon evidence below, we suspect Chavez is supplied directly or indirectly by "Chava 2000" or, at least, the same group that "Chava 2000" works for. Chavez is assisted at least by his brother, David. Through an informant, an undercover agent has purchased methamphetamine from David Chavez in transactions set up through Andres Chavez. Andres Chavez uses T-2 to facilitate his drug trafficking activities.

(Doc. # 441-4 at 4).

> Agent Jackson described the goals of the investigation including

> (1) determining the volume and geographic scope of Chavez's and Aviles's drug trafficking activities; (2)determining certain manner and means of the offenses, such as how drugs are transported into the country, how proceeds are transported or laundered, where drugs and money are stored or held; (3) identifying and developing sufficient evidence to prosecute Chavez's criminal associates, including suppliers, assistants, and major distributors; (4) developing sufficient prosecutable evidence against Aviles; (5) identifying and developing sufficient evidence to prosecute Aviles's criminal associates, including suppliers or persons who use Aviles to transport drug loads, couriers, loaders, and major load recipients; (6) determining the scope, composition, hierarchy, and methods of operation of the drug trafficking group with which Chavez, Aviles, and Chava 2000 are associated; and developing sufficient prosecutable evidence to dismantle that group; and (8) identifying and developing sufficient evidence to forfeit assets used to facilitate, or that constitute proceeds of, the offense.

(Doc. # 441-4 at 3).

Agent Jackson outlined the evidence from the government's investigation to support the assertion in the application that Andres Chavez-Chavez is a multi-pound methamphetamine distributor in San Diego County, that Aviles heads a transportation cell that imports methamphetamine, and that the two individuals appear to be a common drug-trafficking group. (Doc. # 441-4 at 3). Agent Jackson stated in the affidavit that on May 24, 2006, an undercover agent called the target number (T-2) to set up a purchase of one pound of methamphetamine from Andres Chavez, through his brother David Chavez. Agent Jackson described the details

1  of this drug transaction.  (Doc. # 441-4 at 6).

2      In "Section II: Necessity" of the affidavit, the Agent Jackson stated in part "while we

3  have made progress in this investigation, we have not achieved our investigative objectives...

4  [and that] wire interception over T-2 is necessary to accomplish those goals, ... because normal

5  investigative procedures have been tried and failed, reasonably appear unlikely to succeed if

6  tried, or are too dangerous."  (Doc. #441-4 at 13).  Agent Jackson detailed the investigative

7  procedures tried to date including undercover operations, informants and other cooperators,

8  physical surveillance, searches and seizures, grand jury and subpoenas, witness interviews,

9  phone analysis, and prior wiretaps.  (Doc. #441-4 at 13-36).

10     On July 26, 2006, United States District Judge Barry Ted Moskowitz found probable

11  cause to believe that Andres Chavez-Chavez, David Chavez-Chavez, Salvador Chavez-

12  Chavez, Gerardo Casanova, "Chava 2000", Carlos Aviles and others known and unknown have

13  committed, are committing, and will continue to commit the offenses of distribution of

14  controlled substances and conspiracy to do same, importation of controlled substances and

15  conspiracy to do same, illegal use of a communication facility, and money laundering.  Judge

16  Moskowitz found that "[i]t has been adequately established that normal investigative

17  procedures have been tried and failed, reasonably appear unlikely to succeed if tried, or are too

18  dangerous to employ." (Doc 441-4 at 32).  Judge Moskowitz signed an order authorizing the

19  interception of communications on the target telephone (T#2).

20     Defendant states in the memorandum in support of the motion for an order suppressing

21  the wiretaps that subsequent extensions for target telephone (T-2) and additional target

22  telephones were sought and orders signed in this case on August 25, 2006; September 23,

23  2006; October 20, 2006; November 27, 2006; December 28, 2006; February 9, 2007; March

24  9, 2007; and April 27, 2007.  These applications and orders have not been provided to this

25  Court.

26                    **CONTENTIONS OF THE PARTIES**

27     Defendant Ojeda contends that the wiretap authorized from the July 26, 2006

28  application and each of the successive applications were unlawful, and that the evidence

- 3 -

obtained from the wiretaps should be suppressed as "fruit of the poisonous tree." Defendant contends that the affidavit of Agent Jackson submitted in support of the application for an order authorizing the wiretap failed to establish the requisite necessity under 18 U.S.C. § 2518(1)(c). Defendant asserts that the affidavit of Special Agent Jackson failed to make the required full and complete statement of facts and presented no issue of danger as a justification for the wiretap. Defendant asserts that ordinary investigative procedures employed before the July 26, 2006 wiretap had produced overwhelming evidence to prosecute the Andres Chavez-Chavez organization and that there was no genuine need for the wiretap. In addition, Defendant contends that the Government relied upon communications intercepted pursuant to other federal wiretap in establishing probable cause for the July 26, 2006 wiretap application.

The Government contends that Defendant's motion to suppress must be limited to the July 26, 2006 wiretap application and order because the Defendant has presented no substantive arguments or evidence regarding the validity of any subsequent wiretap application or order in this case. The Government asserts that the affidavit in support of the July 26, 2006 wiretap application fully disclosed all facts including all prior application that were required to be disclosed under 18 U.S.C. § 2518(1)(e). The Government asserts that the affidavit in support of the July 26, 2006 wiretap application fully and completely discussed other investigative methods and adequately set forth facts to establish necessity under Section 2518(1)(c). In addition, the Government asserts that other Title II wiretaps were not used as a means of establishing probable cause for the July 26, 2006 wiretap order and that the agents in this case relied in good faith on the authorization of the issuing court.

## ANALYSIS

a. Full and Complete Statement of Facts under Section 2518(1)(e)

Defendant contends that the wiretap communications obtained through the July 26, 2006 wiretap order must be suppressed because the application failed to inform the authorizing judge of two federal wiretaps executed by United States District Court Judge Roger T. Benetiz on May 7, 2005 and July 11, 2005. Defendant contends that Miguel Lua-Chavez, Salvador Chavez-Chavez and Andres Chavez-Chavez "were or may have been intercepted under th[ese]

order[s]." (Doc. # 361-2 at 11). The Government contends that there was no requirement to disclose the two applications noted by the Defendant because the two applications did not name any targets that were in the July 26, 2006 application order.

Section 2518(1)(e) states in relevant part that each wiretap application must include "a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire, oral, or electronic communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application...". 18 U.S.C. § 2518(1)(e). This section has consistently been interpreted to require disclosure of prior application only when the individual was named as a target in both the prior application and the proposed application. See e.g. *United States v. Easterling*, 554 F.2d 195, 196 (5th Cir. 1977) and *United States v. Florea*, 541 F.2d 568, 576 (6th Cir. 1976). In *United States v. Kail*, 612 F.2d 443, 447 (9th Cir. 1979), the Court of Appeals stated that "Section 2518(1)(e) requires that the application set forth a statement concerning all previous applications, not interceptions, known to the person making the present application." In this case, none of the targets of the June 26, 2006 wiretap application were listed targets in either of the two wiretap orders issued by Judge Benetiz and disclosure of these prior applications was not mandated by Section 2518(1)(e).

b. Necessity under Section 2518(1)(c)

Wiretap authorizations are government by the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510-2522. In order to obtain a wiretap, the government must overcome the statutory presumption against this intrusive investigative method by proving necessity. *United States v. Rivera*, 527 F.3d 891, 897 (9th Cir. 2008); *United States v. Blackmon*, 273 F.3d 1204, 1207 (9th Cir. 2001). Section 2518(1)(c) provides that the affiant in support of an application for a wiretap must provide "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. Section 2518(1)(c). The purpose of this requirement is to "assure that wiretapping is not resorted to in situations where

traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n. 12 (1974). Defendant has the initial burden of establishing a prima facie case showing that the Government failed to meet their burden of production. *United States v. Torres*, 908 F.2d 1417, 1422 (9th Cir. 1990). The Court authorizing a wiretap has considerable discretion so the standard of review is deferential. *United States v. McGuire*, 307 F.3d 1192, 1197 (9th Cir. 2002).

The Court of Appeals reviews "de novo whether the application for wiretapping was submitted in compliance with 18 U.S.C. § 2518(1)(c) [and] the issuing court's decision that the wiretaps were necessary for an abuse of discretion." *Id.* The court's review "includes an assessment of whether the affidavit attests that adequate investigative tactics were exhausted before the wiretap order was sought or that such methods reasonably appeared unlikely to succeed or too dangerous." *United States v. Gonzales*, 412 F.3d 1102, 1111 (9th Cir. 2005). Beyond the specificity requirement, the Court of Appeals has adopted a "common sense approach" in which the reviewing court uses a standard of reasonableness to evaluate the government's good faith effort to use alternative investigative means or its failure to do so because of danger or low probability of success. *Blackmon*, 273 F.3d at 1207. In *McGuire*, the Court of Appeals stated that "conspiracies pose a greater threat to society that individual actions toward the same end" when considering the statutory requirement of necessity under Section 2518(1)(c). 307 F.3d at 1198. The Court of Appeals explained:

> Conspiracies pose other special dangers. Unlike individual criminal action, which comes to an end upon the capture of the criminal, collective criminal action has a life of its own. . . . Reflecting this concern, we have consistently upheld findings of necessity where the traditional investigative techniques lead only to apprehension and prosecution of the main conspirators, but not to apprehension and prosecution of . . . other satellite conspirators. Because the government has a duty to extirpate conspiracy beyond its duty to prevent the mere commission of specific substantive offenses, we conclude that the government is entitled to more leeway in its investigative methods when it pursues a conspiracy.

*Id.* (quotations and citation omitted).

Section 2518(3)(c) provides in relevant part that a judge may approve a wiretap if he or she "determines on the basis of the facts submitted by the applicant that ... normal investigative procedures have been tried and have failed or reasonably appear to be unlikely

1   to succeed if tried or to be too dangerous... ."  18 U.S.C. § 2518(3)(c).

2       The affidavit of Agent Jackson includes case-specific detail of the investigation

3   including physical surveillance, searches and seizures, grand jury and subpoenas, witness

4   interviews, phone analysis, and prior wiretaps.  (Doc. #441-4 at pages 13-36).  Agent Jackson

5   described the impediments to achieving the goals of the investigation of this conspiracy by

6   normal investigative procedures.  Agent Jackson explained that the agents have been unable

7   to identify a main target of the investigation "Chava 2000" and that another main target Carlos

8   Aviles lives and primarily operates in Mexico further limiting the options of law enforcement.

9   Agent Jackson explained that undercover operations have produced only an arm's length

10  buyer/seller relationship and  that under cover operations cannot disclose details about illegal

11  activities with sufficient specificity because "there is no need for Chavez to disclose those

12  details" and "Chavez has a strong incentive not to disclose such information."  (Doc. #441-4

13  at pages 13).  Agent Jackson explained that it is unlikely that an undercover informant could

14  develop the type of relationship with Chavez which would reveal the details of the illegal

15  activities because "those relationships among large-scale drug traffickers almost always are

16  based on long periods of joint criminal association or familial connections."  *Id.*  Agent

17  Jackson further explained that confidential informants are afraid of retaliation against

18  themselves and their families; that an undercover operation cannot target "Chava 2000"

19  because law enforcement does not know his identity; that cooperators are in custody and

20  illegally in the country; and that physical surveillance of Chavez is minimally useful by itself

21  because law enforcement cannot explain the significance of meetings, phone calls or other acts.

22  Agent Jackson further detailed the useful information collected by searches and seizures,

23  witness interviews, grand jury subpoenas and phone analysis as well as the limitations of these

24  investigation techniques to produce evidence to accomplish the objectives of uncovering the

25  details of the drug trafficking activities of the conspiracy.

26      The Court concludes that the affidavit in support of the July 26, 2006 application

27  adequately detailed the use of undercover agents and/or confidential informants, search

28  warrants and other traditional investigational procedures.   The issuing court properly

1   concluded that "[i]t has been adequately established that normal investigative procedures have

2   been tried and failed, reasonably appear unlikely to succeed if tried, or are too dangerous to

3   employ."  (Doc. # 441-4 at 32).  The Court concludes that application for wiretapping was

4   submitted in compliance with 18 U.S.C. § 2518(1)(c) and that the issuing judge did not abuse

5   his discretion in finding that the affidavit in support of the initial wiretap met the statutory

6   requirement of "necessity" set forth in Section 2518(1)(c).

7   c. Probable cause

8       Defendant contends that the July 26, 2006 wiretap order is not valid because prior

9   wiretaps were used to establish probable cause for the July 26, 2006 wiretap and the

10  Government has not demonstrated necessity for the prior wiretap applications.

11      The Court finds that the probable cause for the July 26, 2006 wiretap order was properly

12  predicated on information from confidential sources involved with the Andres Chavez-Chavez

13  drug trafficking group and the controlled purchase of methamphetamine from the Andres

14  Chavez-Chavez drug trafficking group on May 24, 2006 described in detail in the affidavit of

15  Agent Jackson.  There is no indication in the affidavit that the government was relying upon

16  calls from prior wiretaps to establish probable cause for the July 26, 2006 application.

17                                    **CONCLUSION**

18      There are no grounds to suppress the any of the wiretap evidence in this case and no

19  misleading statements or omissions have been identified that would require an evidentiary

20  hearing.  IT IS HEREBY ORDERED that the motion for an order suppressing wiretap

21  evidence or, alternatively, setting an evidentiary hearing filed by Defendant Salvador Ojeda-

22  Amarillas (Doc. # 361) is DENIED.

23  DATED:  March 3, 2009

24                          **WILLIAM Q. HAYES**
25                          United States District Judge

26

27

28